George F. SKIVINGTON and Jack W. Larson, Appellants (Defendants below),

v.

STUDER TRACTOR AND EQUIPMENT COMPANY, a Corporation, Appellee (Plaintiff below).

No. 2906.

Supreme Court of Wyoming.

March 29, 1960.

Elmer C. Winters, Lander, for appellants.

G. L. Spence, of Spence, Hill, Oeland & Tschirgi, Riverton, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Claiming that defendants· had defaulted under the terms of a conditional sales contract by failing to pay monies due thereunder, plaintiff took possession and sold the equipment involved, applying the net proceeds of the sale to payment of the debt, and then sued defendants for the remaining deficiency of $30,490.05, and in a second cause of action for recovery of additional sums upon an open account. Defendants alleged they had given, and plaintiff had accepted, an absolute and unconditional assignment of defendants' claim against a third party amounting to $21,727.50; that defendants were entitled to a credit upon their conditional sales contract in that amount; that by reason of such a credit they were not in default under the terms of the contract; and that the sale of the equipment had been improperly made and was a fraud upon them. Defendants made no defense against the claim upon the open account. Following a trial without jury, the court found generally in favor of the

plaintiff and against the defendants; that the sale of the equipment which brought $19,000 was fairly conducted and the property was sold for a fair value; that the assignment by defendants to the plaintiff of their claim against the third party was conditional to be applied as a credit only for such amounts as might be collected, and at the date of the trial no amount had been so collected; that plaintiff, in open court, had offered to reassign the account to the defendants and that such reassignment should be made. Thereupon the court gave judgment in favor of the plaintiff and against defendants in the full amount upon the open account and also for the alleged deficiency, interest and attorneys' fees totaling the sum of $32,429.95, together with judgment for costs taxed at $13.55. Defendants have appealed.

While appellants have separately listed various points in support of their appeal, there are but two of their contentions which require consideration: (1) That the court erred in deciding the assignment of defendants' claim of $21,727.50 against the third party was not accepted by plaintiff as a credit in that amount upon defendants' debt to plaintiff, and (2) in holding plaintiff properly sold the equipment and that the purchase price received did not make the sale fraudulent. This amounts to saying the judgment of the court was not supported by the evidence or that it was contrary to the evidence. The defendants also insist that because the assignment was unconditional in transferring to plaintiff the entire and absolute title to the assigned claim, defendants were entitled, as a matter of law, to be credited with the full amount of defendants' claim against the third party.

The crux of the matter does not lie in whether the assignment was absolute and unconditional so as to transfer the entire legal title to the claim, but rather whether the assignment was *accepted* by plaintiff as a credit in its face amount upon defendants' debt to plaintiff. The rule of law applicable is briefly stated in 6 C.J.S. Assignments § 73, p. 1124, where it is said:

"As a general proposition, in order to render a transaction effective as an assignment either at law or in equity, it must be communicated to the assignee, and his acceptance or assent thereto must be given in some manner. * * *"

Similarly in 4 Am.Jur., Assignments, § 86, p. 299, it is stated:

"It is necessary, in order to make an assignment effective, that there be not only a delivery of the thing assigned, but an actual or constructive acceptance thereof by the assignee. * * *"

The only portions of the evidence bearing upon the plaintiff's acceptance of the assignment as a payment by defendants upon the conditional sales contract are hereinafter set forth at some length.

On the direct examination of defendant Skivington, he identified the assignment which was marked Exhibit "B", offered and received in evidence. The witness then testified:

"Q. Recalling Defendants' Exhibit 'B', Mr. Skivington, which you identified to the Court as an assignment, did you *deliver* that to Mr. Studer? A. Yes, sir, I handed it to him personally. (Emphasis supplied.)

"Q. Did he accept it? A. Yes."

The above constitutes the whole of the direct testimony produced by defendants to prove plaintiff had accepted the assignment *as payment on the conditional sales contract of the sum of $21,727.50.* There is nothing further in the defendants' evidence to indicate whether the acceptance referred to in the answer of the witness was anything more than a mere delivery of the instrument evidencing the assignment.

When the same witness was called in rebuttal by plaintiff for cross-examination as an adverse witness, he further testified as follows:

"Q. Isn't it true, Mr. Skivington, that Mr. Studer told you that he would help you collect that money from Shawano? A. Yes.

"Q. And that he needed an assignment for that purpose? A. Yes.

"Q. And that if you would give him an assignment he would do the best he could to help you collect your money? Wasn't that what he said? A. He said he would collect the money because he had attorneys by the year; it would be less costly.

"Q. He said he would do that for you, didn't he? A. Not for me. He said he would collect the money."

Later on the same witness testified:

"Q. Did Mr. Studer ever say he would give you $20,000 or $21,000 credit on your note for this assignment? A. Give it back? No.

"Q. Did he ever say he would give you credit? A. I couldn't answer that yes or no."

To say the least, viewing this rebuttal testimony as a whole, it seems somewhat evasive and gave plain inference that Studer had not accepted the assignment *as a credit upon the debt due.*

In the witness' later rebuttal testimony it is true the following took place:

"Q. As a matter of fact, what he did say, Mr. Skivington, was, wasn't it, that, 'I'll help you collect it; I'll use the services of my attorneys and do the best I can for you to collect it'? Isn't that what he said to you? A. No. What he said: He said that he would collect the money, as he had attorneys hired by the year.

"Q. He didn't agree to give you a credit on the note for it, did he? A. He just took the assignment.

"Q. He didn't agree to give you a credit for it, did he? A. I would say he did, yes.

"Q. You say he did. When did he agree to that? A. Probably at the time when he handed me the assignment. [This statement contradicts his former testimony that he handed the assignment to plaintiff.]

"Q. Sometime in March—or May of 1958? A. May or June.

"Q. What did he say to you, George, when he agreed to take this assignment and when he agreed to give you the $21,000 credit, what did he say? A. He said he would collect it.

"Q. He said he would collect it. That is what he said, isn't it? A. Yes, sir.

"Q. He didn't say, 'I'll give you a credit,' did he? A. We wasted our time drawing up the assignment if he didn't.

"Q. Now, if you will answer the question, he didn't say 'I'll give you $21,000 credit', did he? A. I believe I answered that.

"Q. All right. What was your answer? A. Yes."

But the further testimony of this witness showing defendants continued in their efforts to refinance themselves in order to "pay off" the plaintiff presented a major inconsistency with their contention that the assignment was given and accepted as a payment upon their debt. It strongly indicates that even the defendants did not consider plaintiff had agreed to credit the debt with the amount represented by defendants' claim against the third party.

█ The record contains no other evidence bearing on this vital acceptance feature of the assignment except that which is to be found in the language of the assignment itself. Consequently, the correctness of the trial court's finding that plaintiff had not accepted the assignment as a payment lies in whether this testimony, taken as a whole, was sufficient in the light of the provisions of the assigning instrument itself to warrant the conclusion that the parties did not intend the assignment to be a payment.

█ In this case, the defendants have not denied they were obligated to make payment for the equipment under the terms of the conditional sales contract. They were defending the action solely upon their

contention that the assignment of their claim against a third party constituted a payment upon the contract in an amount equal to the assigned claim. Under these circumstances it should be borne in mind that the burden of producing evidence to prove the assignment was accepted as such a payment upon the contract devolved upon the defendants themselves. See First National Bank of Morrill v. Ford, 30 Wyo. 110, 216 P. 691, 31 A.L.R. 1441; 22 C.J. Evidence § 21, p. 78, note, 18; 31 C.J.S. Evidence § 110, pp. 718, 719; 20 Am.Jur., Evidence, § 132, p. 134 et seq., under III Burden of Proof. The character of Skivington's testimony under cross-examination was sufficient to entitle the court to conclude the assignment had not been accepted by plaintiff as a payment upon the conditional sales contract, notwithstanding his uncertain testimony given on direct examination or his ultimate direct answer that plaintiff did accept the assignment as payment. His testimony on cross-examination seems evasive and contradictory. The witness first said he could not answer the direct question either yes or no, then equivocated, finally stated plaintiff accepted the assignment *as payment upon the contract*, but, nevertheless, continued efforts to refinance so as to pay the debt.

In addition to the lack of evidence on defendants' part to establish plaintiff had accepted the assignment as a credit on their debt, the instrument of assignment itself shows somewhat clearly that it was the intention of the assignor that the instrument was given only to enable plaintiff to attempt collection from the third party of the debt which defendants claimed was owing to them. The following paragraph in the instrument should make that plain:

"Hereby granting and giving to the Studer Tractor and Equipment Company, its successors and assigns, the full power and authority for its or their own use and benefit, but at its or their own cost, to take all legal measures which may be proper or necessary for the complete recovery of the aforesaid account, and in the name of the under-signed or otherwise to prosecute and withdraw any suits or proceedings at law or otherwise for the recovery of the same, and to receipt for all sums recovered in the name of the under-signed or otherwise; it being specifically stipulated that all amounts, less proper costs of collection, recovered by Studer Tractor and Equipment Company hereunder, shall be applied to the indebtedness of the undersigned to the Wyoming National Bank of Casper, Wyoming in payment of the indebtedness of the undersigned to said bank for the purchase of equipment and upon which the Studer Tractor and Equipment Company is an endorser, and the surplus, if any, shall be paid to the undersigned."

The above quoted provision, at least in the absence of affirmative evidence to the contrary, is of itself sufficient to establish that the assignment was made solely to enable the plaintiff to assist, if possible, its debtors in making collection of amounts claimed to be due from a third party and that it would only be if and when any sums were so collected that credit was to be given defendants upon the debt they owed the plaintiff.

The evidence most favorable to the successful party shows that when defendants were advised plaintiff would have to take some action regarding the delinquent payments, defendants told plaintiff to take the equipment. This plaintiff did, taking the property at the place of its location 18 miles north of Shoshoni, Wyoming. Thereafter, plaintiff published notice for four days, commencing with the issue dated July 2, 1958, and ending with the issue dated July 7, 1958, in the Casper Tribune-Herald, Casper Morning Star, a newspaper published daily at Casper, Natrona County, Wyoming, that a sale of the equipment would be made to the highest bidder on Wednesday, July 9, 1958, and "Call Riverton, Wyoming; Ph. UL 6–2278 for further information." And plaintiff also published notice for three consecutive issues, commencing July 1, 1958, and ending July 8, 1958,

in The Riverton Ranger, The Riverton Review, and The Riverton Times, a semi-weekly paper of general circulation published twice a week at Riverton, Fremont County, Wyoming, that sale of the equipment would be made to the highest bidder on July 9, 1958, and "For information Call UL 6–2278." In response to those notices, bids for the equipment were received in respective amounts of $15,500, $14,000 and $19,000. In addition, one prospective purchaser wrote advising that the equipment was "too old for us to consider". The equipment was, therefore, sold to the $19,-000 bidder. Other testimony showed the fair market value of the equipment at the time of its sale on July 9, 1958, was "about thirteen, fourteen thousand dollars". Without going further into the record, the above evidence is sufficient to sustain the court's finding that the sale of the equipment was fairly conducted and sold for a fair value.

The uncontradicted evidence received by the court shows the plaintiff used reasonable effort to make collection of the third party debt, but was unsuccessful.

We conclude, therefore, that the findings of the court and its judgment are amply supported by record evidence, and the same are affirmed.

Affirmed.